JUSTICE TRIEWEILER
specially concurring.
I concur that based on the law we are asked to construe, there was sufficient evidence to support the Workers’ Compensation Court’s denial of benefits in this case. However, that law is a model of anti-worker bias. The disability statute which pertains to Perryman’s claim was described as follows shortly after its enactment:
In other words, a worker’s partial disability benefits under the new benefit provision are now determined by comparing what the worker actually earned at the time of his injury to some wage that he might theoretically be capable of earning subsequent to his injury. The new law thus uses the most conservative possible standard for pre-injury earning capacity and the most liberal possible standard for post-injury earning capacity. It makes no difference if the worker had been capable of working in heavy industry at $12 an hour and was injured during a temporary lay-off while pumping gas for $3.35 an hour. The fact that the worker is now physically incapable of returning to his former occupation will have no bearing on the rate at which he is paid partial disability benefits.
To make matters even more unfair, the reduced actual earnings at the time of his injury will be compared to some theoretical earnings in the worker’s “job pool” after his injury. It makes no difference that the job is unavailable, that the employer would not hire the worker, or that the job is 500 miles away on the other side *148 of Montana. In determining the pre-injury standard, actual earnings are all that count. However, in determining the post-injury standard against which pre-injury earnings must be compared, the computer and the vocational consultant’s imagination are the only limits.
Such a scheme is arbitrary, irrational and, by design, unfair to the worker who has forfeited common-law rights to compensation for what now appears, at best, to be an illusory system of income protection.
What sense does it make to limit a worker’s pre-injury earning capacity to his actual earnings at the time of his injury, but base his post-injury earning capacity on a “job pool” which may have no practical relevance to what he is actually able to earn? In the worst case scenario, the worker’s actual earnings at the time of his injury may be atypically low and unrepresentative of what he was actually capable of earning, and his “job pool” may represent no real opportunities for employment. That worker may find himself unable to continue in employment that would previously have paid $30,000 to $40,000 a year, with no realistic alternatives in the present job market, and no disability benefits under Montana’s current workers’ compensation system. That worker has received nothing of value in exchange for the forfeiture of his common law and constitutional rights to legal redress. If this is the price of improving Montana’s economic climate, then the price is too high.
Terry N. Trieweiler, The New Workers’ Compensation Act — Something for all Montanans to he Ashamed of, 50 Mont. L. Rev. 83, 91-93 (1989) (footnote omitted).
Section 39-71-703, MCA (1987), is the result of a concerted effort by recent legislatures to skew the Workers’ Compensation Act completely in favor of employers and their insurers, and against those crippled and disabled workers for whose benefit and protection the Act was originally created. It is an example of government by business interest groups at its worst.
It is a reminder that what was once a progressive act for the protection of disabled workers and their families has been reduced to nothing more than a shield against liability for their employers.
Nevertheless, there is no constitutional requirement that the legislature act wisely, fairly, or compassionately. And, so long as the *149 Legislature acts within its constitutional constraints, this Court has no authority to overrule its enactments.
Therefore, I conclude that based on the statutory law with which the Court is presented, the majority has arrived at the correct conclusion, and I reluctantly concur in that conclusion. However, it is with a good deal of regret that I acknowledge this sorry state of affairs for injured workers in Montana.
JUSTICE HUNT joins in the foregoing concurring opinion.